1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  LESLIE E. HURST (178432)
   JENNIFER L. MACPHERSON (202021)
3  501 West Broadway, Suite 1490
   San Diego, CA  92101
4  Tel: 619/338-1100
   619/338-1101 (fax)
5  tblood@bholaw.com
   lhurst@bholaw.com
6  jmacpherson@bholaw.com

7  BARNOW AND ASSOCIATES, P.C.
   BEN BARNOW
8  ERICH P. SCHORK
   ANTHONY L. PARKHILL
9  205 W. Randolph Street, Suite 1630
   Chicago, IL  60602
10 Tel: 312/621-2000
   312/641-5504 (fax)
11 b.barnow@barnowlaw.com
   e.schork@barnowlaw.com
12 aparkhill@barnowlaw.com

13 Attorneys for Plaintiff

14        **UNITED STATES DISTRICT COURT**

15   **NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION**

16 KEN LY, individually and on behalf of all       | Case No.
   others similarly situated,
17                                                  | **CLASS ACTION COMPLAINT**
                     Plaintiff,
18                                                  |
                     v.                             | **CLASS ACTION**
19
   TOYOTA MOTOR SALES, U.S.A., INC., a
20 Texas corporation; and TOYOTA MOTOR
   NORTH AMERICA, INC., a Texas
21 corporation,
22                     Defendants.
23                                                  | **JURY TRIAL DEMANDED**

24

25

26

27

28

BLOOD HURST & O' REARDON, LLP

00161081

CLASS ACTION COMPLAINT

Plaintiff Ken Ly ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, brings this class action complaint against Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Manufacturing North America, Inc. (collectively, "Defendants" or "Toyota"), and alleges as follows:

## NATURE OF THE CASE

1.      Model year 2019 and 2020 Toyota RAV4 Hybrid vehicles (collectively, the "Subject Vehicles" or "RAV4 Hybrid") contain a defect that prevents the gas tank from being filled to capacity. Toyota advertises the RAV4 Hybrid as having a 14.5 gallon tank. However, a flaw in the fuel system routinely prevents the Subject Vehicles from accepting more than 10 gallons of gas, often times far less, before the pump is triggered to prematurely shut off, even when the low fuel light is illuminated ("Fuel Tank Defect").

2.      As a result of the Fuel Tank Defect, the Subject Vehicles fail to comply with federal and state regulations prohibiting vehicles from being sold in California that cannot fill 90 percent of their nominal tank capacity, or to within two gallons of their nominal tank capacity (whichever is less), before the gas pump automatically shuts off.

3.      The Fuel Tank Defect effectively reduces the usable tank capacity of these hybrid SUV's to 10 gallons or less, drastically reducing their driving range, a major selling point and for which customers pay a premium.

4.      Toyota advertises the Subject Vehicles as having a 14.5 gallon tank that averages 41/38/40 mpg (city/highway/combined). A vehicle advertised as having a 14.5 gallon tank and as getting 40 mpg has a driving range of 580 miles. Toyota emphasizes the range in its advertisements, telling customers they can "Go farther. Go faster" in the RAV4 Hybrid and to "get ready to make the most of every mile and every trip — you might be surprised just how far it takes you."

5.      Despite knowing about the Fuel Tank Defect, Defendants do not warn purchasers and lessees of the defect.  Instead, Defendants continue to expressly and impliedly represent that the Subject Vehicles are well-designed, properly manufactured, are safe for their intended use, and comply with federal and state emission regulations.

6.      As a result of Defendants' omissions and misrepresentations regarding the Fuel Tank Defect, Plaintiff and the proposed Class purchased products that do not function as advertised and which fail to comply with federal and state law.

7.      Toyota designed, manufactured, distributed, sold and leased the Subject Vehicles. All Subject Vehicles share the Fuel Tank Defect. The vehicles cannot be repaired, even under warranty, because Toyota has not issued a fix.

8.      Plaintiff brings this action, on behalf of himself and other similarly situated consumers who purchased a Subject Vehicle to obtain redress and to require Defendants to properly inform consumers of the Fuel Tank Defect. Based on violations of state unfair competition laws and Defendants' omissions and misrepresentations, Plaintiff seeks injunctive and monetary relief for consumers who purchased the Subject Vehicles. Plaintiff has suffered injury in fact and lost money or property in the form of purchasing the Subject Vehicle as a result of Defendants' alleged unfair business practices.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class members are citizens of states that are diverse from Defendants' citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

10.     Venue is proper in this judicial District under 28 U.S.C. § 1391(b) because Plaintiff purchased his Subject Vehicle in this District and a substantial part of the challenged conduct or omissions giving rise to claims occurred and/or emanated from this District and Defendants have caused harm to Class members residing in this District.

## INTRADISTRICT ASSIGNMENT

11.     Plaintiff resides in and purchased his vehicle in this District. As such, a substantial part of the events or omissions which gave rise to Plaintiff's claims occurred in and a substantial part of the property that is the subject of the action is situated in this District. As such, this action may be properly assigned to the San Jose Division of this Court pursuant to Civil Local Rule 3-2(d).

BLOOD HURST & O' REARDON, LLP

2

00161081

BLOOD HURST & O' REARDON, LLP

## PARTIES

12.    Plaintiff Ken Ly resides in Sunnyvale, California and is a citizen of the State of California. In August 2019, Mr. Ly purchased a 2019 RAV4 Hybrid from Piercey Toyota in Milpitas, California. Shortly after purchase, upon his first attempt to refuel, Mr. Ly's RAV4 Hybrid manifested the Fuel Tank Defect, which defect continues and is ongoing. Mr. Ly took his vehicle to Toyota twice for diagnosis and repair of this defect, with no result.

13.    Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor North America, Inc. are Texas corporations with their principal place of business at 6565 Headquarters Drive, Plano, TX 75024. Toyota is responsible for the manufacture, distribution, marketing, sale and lease of the Subject Vehicles in California and throughout the United States. Toyota has a nationwide dealership network and operates offices and facilities throughout the United States.

## FACTUAL BACKGROUND

### I.    The Subject Vehicles

14.    The RAV4 is a compact crossover SUV that debuted in model year 1996. It is Toyota's best-selling vehicle in the United States. As of November 2019, Toyota sold or leased, directly or indirectly, through dealers and other retail outlets in the United States, 82,398 2019 RAV4 Hybrid vehicles.

15.    The fifth generation RAV4 was unveiled in 2018 with the Hybrid going on sale in March 2019. The fifth generation includes the 2019 and 2020 RAV4 Hybrids, offered in four grades: LE HV, XLE HV, XSE HV and Limited HV. Several significant design changes were made to the fifth generation RAV4, including changing the shape of the fuel tank from a "Native American papoose" shape to a "latitudinal, saddle-shaped design[.]"

16.    The RAV4 Hybrid system combines the use of a gasoline engine and an electric motor. The gasoline engine and regenerative brakes charge the hybrid battery, eliminating the need to charge from an outside source.

17.    Toyota advertises the Subject Vehicles as having a 14.5 gallon gas tank and being able to get on average 41/38/40 mpg (city/highway/combined), giving this hybrid SUV a driving range of 551 to 594 miles.

## II.     Toyota's Green Branding

18.     Consumers are willing to pay more for hybrid vehicles because of the cost savings associated with fewer trips to the gas station and their reduced environmental impact, as compared to their gas-only counterparts. Because hybrids power their electric motors with waste energy, they burn less fuel than conventional cars and emit lower levels of greenhouse gases during operation.

19.     Toyota capitalizes on consumers' desire to save money and protect the environment through "Green branding," promoting itself as a leader in environmental protection and sustainability that is "building better cars for the road and for the planet." Toyota markets this as one of its core values. Toyota's logo reflects this. According to Toyota, "[t]he space in the background within the logo exhibits the infinite values that Toyota wishes to convey to its customers: superb quality, value beyond expectation, joy of driving, innovation, and integrity in safety, the environment, and social responsibility."

20.     A central theme of Toyota's Green branding is its focus on hybrids. Toyota proclaims it reduces carbon dioxide emissions from its vehicles through "the use of hybrid technology" and says that it is "working to ensure our cars and trucks are at the forefront of environmental engineering. Today, with more than 2 million Toyota hybrid vehicles on U.S. roads – more than any other manufacturer – and new breakthroughs in plug-in, electric, and hydrogen fuel cell technologies, we're building better cars for the road and for the Earth."

21.     Toyota recently boasted about its "history of environmental achievements and progress" claiming that "[s]ince 2000 here in the U.S., we've sold over 3.6 million hybrids which have saved over 7.6 billion gallons of fuel and kept over 68 million tons of $CO_2$ from entering the atmosphere. That's the equivalent of taking 13.4 million vehicles off the road for a year."

22.     Purchasers of the RAV4 Hybrid were exposed to Toyota's Green branding through years of advertisements and on Toyota's website, including for the Subject Vehicles.

## III.    Toyota Touts the Fuel Capacity and Benefits of the RAV4 Hybrid

23.     Toyota advertises the Subject Vehicles as having a 14.5 gallon gas tank that can get an estimated 41/38/40 mpg (city/highway/combined), giving it a range of over 550 miles. A 14.5 gallon tank multiplied by an average 40 mpg equates to a 580 mile range. A 14.5 gallon tank

BLOOD HURST & O' REARDON, LLP

multiplied by 38 mpg (highway) gives a 551 mile range. And a 14.5 gallon tank multiplied by 41 mpg (city) is a range of 594.5 miles. Toyota advertises the size of the SUV's gas tank on its website, in the RAV4 Hybrid brochure, and in the Owner's Manual.

24.     A major selling point of the RAV4 Hybrid is the promised driving range. Toyota's advertising emphasizes how far the RAV4 Hybrid SUV can go. 2019 and 2020 RAV4 Hybrid customers are told to "Go farther. Go faster" with the RAV4 Hybrid and to "get ready to make the most of every mile and every trip — you might be surprised just how far it takes you."

25.     To further promote the driving range and fuel capacity of the RAV4 Hybrid, Toyota designed the Subject Vehicles to provide drivers with detailed information regarding range and fuel capacity, promoting its "fuel economy information" as an interior feature of the RAV4 Hybrids.

26.     The Owner's Manual explains that the vehicles' multi-information display shows Distance to Empty, defined as the driving range with remaining fuel (based on average fuel consumption). Cruising Range, defined as the estimated maximum distance that can be driven with the quantity of fuel remaining. Drivers are also shown their current fuel economy, average fuel economy, and best recorded fuel consumption, latest fuel consumption, and previous fuel consumption.

**IV.     The Fuel Tank Defect**

27.     The 2019/2020 RAV4 Hybrid contains a defect that prevents owners and lessees from obtaining a full tank of gas. Even when the low fuel light is illuminated, owners cannot add more than 10 gallons of gas before the pump automatically shuts-off. The problem is continuous and can be reproduced. The defect effectively reduces the usable tank capacity of the Subject Vehicles to 10 gallons or less. The defect drastically reduces the driving range of these Subject Vehicles by decreasing the number of miles that can be driven before refueling is needed.

28.     Toyota advertises the Subject Vehicles as having a 14.5 gallon gas tank that gets 41/38/40 mpg (city/highway/combined) giving it an average range of over 550 miles. The Fuel Tank Defect causes the fuel tank to effectively be 10 gallons or less— significantly less than Toyota advertised —and prevents owners from getting anywhere near the 550 plus mile range.

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

29.     In the Owner's Manual Toyota instructs that the Low Fuel Level Warning Light will illuminate when there is approximately 2.2 gallons or less of gas left in the tank. When this happens, owners are instructed to "**Refuel the vehicle**." Assuming a driver refuels when the low fuel light illuminates, when there is 2.2 or less gallons of gas left in the tank, they should be able to add about 12.3 gallons. In actuality, owners and lessees cannot add more than 10 gallons of gas (often far less) before the gas pump is triggered to prematurely shut-off.

30.     As a result of the Fuel Tank Defect, owners and lessees are not obtaining the fuel tank capacity or the driving range promised by Toyota, for which they pay a premium.

31.     Purchasers of the Subject Vehicles pay on average $2,000 more for the hybrid as compared to the standard gas model. The starting MSRP for the 2019 RAV4 is $25,650 and for the 2020 is $25,850. These are advertised as getting 26/35/30 mpg (city/highway/combined). By comparison the MSRP for the 2019 RAV4 Hybrid is $27,850 and the 2020 RAV4 Hybrid is $28,100 and are advertised as getting 41/38/40 (city/highway/combined).

32.     The average range of the standard gas-only RAV4 is 435 miles based on Toyota's representations that it has a 14.5-gallon gas tank and gets an average 30 mpg. The Fuel Tank Defect results in the RAV4 Hybrid having less driving range than the cheaper gas-only RAV4.

33.     Toyota's customers reasonably expect their vehicles to perform as represented by Defendants.   Contrary to this promise and expectation, the Subject Vehicles were designed, manufactured, and sold with a Fuel Tank Defect that renders the vehicles unable to accept a full tank of gas. This drastically reduces the promised driving range of the Subject Vehicles, increases the amount owners and lessees must spend on gas as a result of increased driving to and from the gas station, creates safety issues for drivers and a hazard to the environment, and violates federal and state emission regulations.

34.     The Fuel Tank Defect is widespread. As of January 28, 2020, over one hundred owners and lessees filed complaints with NHTSA. They report being unable to fill their tank to capacity, achieving a pump of 10 gallons or less, even when the vehicle is registering low fuel (a difference that cannot be accounted for by the 2.2 gallon reserve capacity of the vehicle), before the Fuel Tank Defect causes the gas pump to prematurely shut-off. Owners and lessees report the

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00161081

1    problem arising shortly, if not immediately, after purchasing the vehicle. Further, the problem is not

2    intermittent but rather happens at virtually every fueling.

3        35.    The large number of similar complaints made to NHTSA are indicative of a common

4    defect that affects all Subject Vehicles. Below are representative samples of complaints consumers

5    submitted to NHTSA for the 2019 RAV4 Hybrid:[1]

6    ■    MY BRAND NEW 2019 RAV4 HYBRID XLE HAS A FUEL TANK THAT IS 14.5 GALLONS, BUT WILL NOT FILL ABOVE 9 TO 11 GALLONS AT ANY TIME. IN SHORT, MY FUEL TANK DOES NOT FILL ALL THE WAY AND I AM THEREFORE SHORT ON OVERALL CAR RANGE, FROM 580MILES TO ABOUT 360-390 MILES PER TANK.

9    ■    MY 2019 TOYOTA RAV4 HYBRID GAS TANK WILL NOT ACCEPT OVER 9.5 GALLONS AT ANY TIME. EVEN WHEN I HAVE ONLY 50 MILES UNTIL GAS TANK EMPTY SHOWING ON DASHBOARD. IT'S A 14.5 GALLON TANK SO THIS IS A PROBLEM.

12   ■    THE FUEL TANK WAS AT MAXIMUM CAPACITY WHEN PICKED UP FROM THE DEALER WITH AN ESTIMATED RANGE OF ~550 MILES. SINCE DRIVING AWAY FROM THE DEALER, I HAVE NEVER BEEN ABLE TO ADD MORE THAN 9-10 GALLONS INTO THE "14.5" GALLON TANK, EVEN WELL AFTER THE "LOW FUEL" LIGHT HAS COME ON. EVEN WITH EXTRA TOPPING OFF AND THE NEEDLE READS AS CLOSE TO FULL AS I CAN GET IT, NOW THE ESTIMATED RANGE TENDS TO BE ~350-370 MILES. I HAVE FILLED UP THE TANK ABOUT 10 TIMES NOW AND THIS OUTCOME IS CONSISTENT.

17   ■    THE FUEL TANK DOES NOT FILL UP TO CAPACITY. I AM ONLY ABLE TO FILL ~8 GALLONS IN A TANK WHICH HAS A 14.5 GALLON CAPACITY … I TOOK IT TO THE SERVICE STATION AND THEY SAID THERE IS NO FIX FROM TOYOTA.

20   ■    RAV4 2019 HYBRID WILL NOT ALLOW ME TO FILL IT PAST APPROXIMATELY 10 GALLONS. WHEN I CONTACTED THE DEALERSHIP THEY INFORMED THEY WERE AWARE OF SAID ISSUE AND THAT TOYOTA CURRENTLY DOESN'T NOT HAVE A FIX OR ACTIVE RECALL FOR THE ISSUE.

23   ■    MY 2019 TOYOTA RAV4 HYBRID XLE (PURCHASED IN CA) WILL NOT ALLOW A FULL FUEL TANK FILLUP. ONCE THE "EMPTY" WARNING COMES ON, THE 14.5 GALLON TANK WILL ONLY ACCEPT ABOUT 9 TO 10 GALLONS BEFORE SHUTTING OFF. EVEN IF YOU SLOWLY "TRICKLE" THE GAS IN, IT SHUTS OFF BEFORE 11 GALLONS ARE IN. CAR IS NOT PROVIDING ANYWHERE NEAR THE AVERAGE ESTIMATED DRIVING

27

28   _____

[1]    All complaints to NHTSA have been reproduced as originally written and may contain spelling or grammatical errors.

BLOOD HURST & O' REARDON, LLP

7

00161081

RANGE OF APPROXIMATELY 560 MILES, AS ADVERTISED BY TOYOTA. THIS REDUCES CREDIBILITY OF THE TOYOTA FUEL STATUS WARNING, MAKING IT MORE LIKELY DRIVERS MAY RUN OUT OF FUEL ON BUSY FREEWAY OR REMOTE HIGHWAY.

■ QWNER OF A 2019 RAV 4 HYBRID, XSE. I'VE OWNED THE VEHICLE SINCE EARLY AUGUST 2019. AND HAVE FELT EXTREMELY FRUSTRATED WITH BEING UNABLE TO "FILL" THE GAS TANK TO IT'S CAPACITY. IT'S EXASPERATING THAT WITH A 14 GALLON TANK, AT FILL UP IT WILL ACCEPT ONLY 9-9.5 GALLONS OF FUEL AT MOST BEFORE THE FUEL FILL SENSOR WILL NOT ACCEPT FURTHER REFUELING. WHEN I PURCHASED THE CAR IN AUGUST, DRIVING THE CAR OFF THE LOT, THE ESTIMATED MILEAGE ON A FULL TANK WAS 513 MILES. I HAVE NOT BEEN ABLE TO FILL THE TANK TO GET THAT ESTIMATION OF MILEAGE SINCE. THE BEST I'VE BEEN ABLE TO GET IS 443, THE TANK WILL NOT ACCEPT THE FUEL. ADDITIONALLY, WHILE I EXPECTED TO AVG. 40-42 MILES/GAL, I GET APPROXIMATELY 34-35 MPG. THIS TOO IS ALSO RIDICULOUS … I USE THE CAR MAINLY FOR HIGHWAY DRIVING AND NOT BEING ABLE TO PASS A FEW GAS STATIONS, IS NOT WHY I BOUGHT THIS CAR! I FEEL THAT THE ESTIMATED HEIGHT MPG WAS GROSSLY OVERSTATED BY TOYOTA.

■ WHEN THE TANK REGISTERS EMPTY, IT ONLY FILLS ABOUT 9/10 GALLONS BEFORE THE PUMP SHUTS OFF AND I DON'T GET THE FULL MILEAGE RANGE. I HAVE TAKEN IT INTO TOYOTA DEALER AND HAVE BEEN IN CONTACT WITH TOYOTA CUSTOMER SERVICE. …

AFTER SEVEN MONTHS OF WORKING WITH THE TOYOTA DEALERSHIP IN SALEM OREGON AND TOYOTA'S CUSTOMER SERVICE DEPARTMENT, THEY FINALLY AGREED TO TESTED MY VEHICLE FOR THE FUELING PROBLEM. AT THAT POINT, THE DEALERSHIP FINALLY ACKNOWLEDGED THAT THERE WAS A PROBLEM. AT THAT POINT, I BEGAN THE PROCESS OF A BUYBACK FOR MY CAR WITH TOYOTA. WITHIN TWO DAYS, I WAS INFORMED THAT THEY WERE GOING TO SWITCH OUT MY GAS TANK FOR A NEW GAS TANK THAT WAS MADE OVERSEAS. I WAS TOLD THAT WOULD SOLVE THE PROBLEM. AFTER RECEIVING MY NEW GAS TANK, THE NEW TANK STARTED TO EXHIBIT THE SAME DIFFICULTIES AS THE LAST TANK. I'M NOW BACK AT SQUARE ONE … (TOYOTA ADVERTISED THAT MY CAR WOULD RECEIVE 550+ RANGE MILES ON A FULL TANK). AS I TRACKED MY FUELING PROBLEM, I NOTICE THAT WHEN MY VEHICLE WAS ONLY TAKING IN 9 TO 10 1/2 GALLONS FROM "EMPTY" TO "F". I'M CONCERNED FOR MY SAFETY BY NOT KNOWING HOW MUCH FUEL IN HAVE IN MY VEHICLE.

■ OUR RAV4 HYBRID WILL RARELY FILL MORE THAN 9-10 GALLONS IN THE TANK. WHEN THE VEHICLE STARTS AFTER A NEW TANK HAS BEEN FILLED THE NEEDLE WILL NOT BE ALL THE WAY AT FULL. ONE OF THE REASONS I WAS SOLD ON THE VEHICLE WAS IT'S RANGE, BUT THIS TANK ISSUE MAKES IT IMPOSSIBLE.

BLOOD HURST & O' REARDON, LLP

- PURCHASED A NEW 2019 TOYOTA RAV4 HYBRID AWD XLE ON 10/24/19. FUEL CAPACITY APPEARS TO BE ABOUT 11 GALLONS, AS OPPOSED TO THE 14.5 GALLONS ADVERTISED. I HAVE RUN THE CAR DOWN TO BELOW 10MILES OF RANGE MULTIPLE TIMES AND GET THE SAME RESULT. THIS 25% UNDERSTATEMENT OF FUEL CAPACITY TRANSLATES INTO ROUGHLY 100 MILES LESS OF TOTAL RANGE THAN THE ADVERTISED 537-595 MILES OF RANGE.

- WHEN PUMPING GAS THE AUTO-OFF FEATURE IS CLICKING EARLY, CAUSING ME TO ONLY FILL BETWEEN 9-10 GALLONS OF THE 14.5 GALLON TANK. I'VE SEEN A LOT OF REPORTS OF THIS ISSUE AND WOULD LIKE TO MAKE MY OWN CLAIM HERE AS WELL … I OWN A 2019 RAV4 XLE HYBRID.

- I BOUGHT MY BOUGHT A 2019 TOYOTA RAV4 HYBRID A COUPLE MONTHS AGO. I LIKE IT FOR THE MOST PART, BUT ONE OF THE PRIMARY REASONS I BOUGHT IT WAS FOR THE ADVERTISED ~550 MILE RANGE. HOWEVER, EVERY TIME I'VE PUT IN A FULL TANK, THE "MILE RANGE" AT THE FRONT DASH SHOWS AROUND 430 MILES. I GOT THE TANK REPLACED BY ATLANTIC TOYOTA IN WEST ISLIP BUT MY TANK IS ONLY GETTING 9 GALLONS OF FUEL WHEN THE TANK IS 14.5 GALLONS.

- FUEL TANK ON MY 2019 RAV4 HYBRID XSE WILL NOT FILL COMPLETELY. TYPICALLY SHUTS OFF AT 9-10 GALLONS AND I CANNOT GET MUCH MORE IN NO MATTER HOW LOW THE FUEL INDICATOR OR HOW OFTEN I REMOVE, REPLACE AND REACTIVATE THE FILLER NOZZLE.

  I HAVE NOTIFIED TOYOTA AND RECEIVED A CASE NUMBER. THERE ARE HUNDREDS OF SIMILAR COMPLAINTS VIEWABLE ON LINE AND TOYOTA IS TAKING A LONG TIME TO FIND A FIX. MEANTIME, THE EPA-ADVERTISED 580 MILES OF RANGE IS A BIG JOKE.

## V.     The Fuel Tank Defect Creates Environmental and Safety Hazards

36.     The Fuel Tank Defect poses a safety hazard, because it leaves drivers guessing how much gas is in the tank. It poses an environmental hazard because it encourages drivers to "top-off" in order to achieve a more complete fill.

37.     By way of example, the Owner's Manual instructs that the low fuel light illuminates when there is approximately 2.2 gallons of gas left in the 14.5 gallon tank. If a driver refuels at this point, they should be able to pump about 12.3 gallons before the pump automatically shuts-off. Because the Fuel Tank Defect causes the gas pump to prematurely shut-off when 10 or less gallons

CLASS ACTION COMPLAINT

00161081

BLOOD HURST & O' REARDON, LLP

of gas have been pumped, drivers are left wondering how much fuel is in the tank and how far they can drive before they run out of gas.

38.    The Fuel Gauge, which is supposed to display the quantity of fuel remaining in the tank often shows less than "full," even immediately after the pump automatically shuts off creating further uncertainty.

39.    Owners are also instructed that when "Refuel" is displayed "the remaining fuel amount is low and the distance that can be driven with the remaining fuel cannot be calculated."

40.    Running out of fuel may result in an accident or leave drivers stranded on the side of a busy or deserted road creating a safety hazard.

41.    Running out of fuel may also damage the Vehicles, including their fuel system components. The Owner's Manual warns that if the Subject Vehicles run out of fuel or the fuel is too low, the hybrid system may not be able to start.

42.    The Fuel Tank Defect creates environmental and safety hazards by causing drivers to "top off" (restart a fuel pump after it has automatically shut off) the fuel tank to try and achieve a complete fill-up. Topping off causes hazardous gas spills creating a danger to the driver, the environment and the vehicle. As a result, the Fuel Tank Defect increases the environmental impact of these hybrid vehicles by increasing the number of trips consumers must make to refuel and causing environmental harm related to fuel evaporation and spillage (causing both groundwater contamination and emission of gasoline vapor).

43.    Toyota is aware of the safety and environmental hazards associated with trying to "top-off" a gas tank. The Owner's Manual instructs drivers to "[s]top filling the tank after the fuel nozzle automatically clicks off" and to "not spill fuel during refueling" because "[d]oing so may damage the vehicle, such as causing the emission control system to operate abnormally or damaging fuel system components or the vehicle's painted surface."

44.    This video depicts how vexing and dangerous attempting to refuel a Subject Vehicle can be, forcing the driver to continually top off the vehicle only to fill the gas tank up half way: https://www.youtube.com/watch?v=ZGOVXRICX-8.

BLOOD HURST & O' REARDON, LLP

00161081

45.     The Fuel Tank Defect presents a safety and environmental hazard that renders the Subject Vehicles unreasonably dangerous to drivers, occupants and the environment. There are safer and non-problematic alternative designs available.

46.     Although Toyota is aware of the widespread nature of the Fuel Tank Defect in the Subject Vehicles, and that it poses a safety and environmental risk, Toyota has failed to take adequate steps to notify owners and lessees of Subject Vehicles and provide relief.

## VI.     Premature Nozzle Shut-Off Violates Federal and State Regulations

47.     Federal and state governmental agencies recognize the environmental impact of premature nozzle shut-off and have issued regulations to address. The California Air Resources Board ("CARB") prohibits vehicles from being sold in California that fail to comply with the "Specifications for Fill Pipes and Openings of 2015 and Subsequent Model Motor Vehicle Fuel Tanks."[2] The Environmental Protection Agency ("EPA") has adopted this Specification.[3] Toyota Certified Compliance with this Specification for the 2019/2020 RAV4 Hybrid.

48.     Among the reasons this is regulated, is to avoid the dangers and environmental consequences associated with "topping off."

49.     The Fill Rate Specifications prohibits "premature nozzle shut-off in 90 percent of the test repetitions for any test nozzle[.]" CARB defines "[p]remature nozzle shut-off" to mean "any automatic shut-off of the vapor recovery nozzle before the vehicle fuel tank is filled to either 90 percent of the nominal fuel tank capacity or to within two gallons less than the nominal tank capacity, whichever corresponds to the smaller quantity of gasoline in the fuel tank."[4]

50.     The RAV4 Hybrids fail to satisfy this Specification where the vapor recovery nozzle prematurely shuts off after adding 10 or less gallons of gas to a 14.5 gallon tank, even when the low fuel light is illuminated, meaning there is 2.2 or less gallons of gas in the tank.

---

[2]     *See* 13 CCR § 2235.

[3]     https://www.epa.gov/sips-ca/epa-approved-statutes-and-state-regulations-california-sip

[4]     "Specifications For Fill Pipes And Openings Of 2015 And Subsequent Model Motor Vehicle Fuel Tanks," adopted March 22, 2012, amended May 31, 2019, at https://ww2.arb.ca.gov/

BLOOD HURST & O' REARDON, LLP

00161081

51.    The Subject Vehicles do not comply with the Fill Rate Specifications issued by CARB and adopted by the EPA.

**VII.    Toyota's Knowledge of the Fuel Tank Defect**

52.    Consumers rely on automakers, like Toyota, to promptly inform them and initiate a remedy or countermeasure when it discovers a vehicle model contains a defect, especially one that exists in multiple models and model years and puts the safety of themselves and their passengers at risk.

53.    Toyota is experienced in the design and manufacture of consumer vehicles. In keeping with industry standards, Toyota conducts tests, including pre-sale durability tests on incoming components, including the fuel tank and fuel system, to verify the parts are free from defects and comply with Toyota's specifications and federal and state regulations. Thus, Toyota knew or should have known about the Fuel Tank Defect and that it was prone to put drivers in a dangerous position.

54.    Upon information and belief, as early as Spring 2019, if not before, Toyota became aware of the Fuel Tank Defect through sources not available to Plaintiff and Class members, including, but not limited to, pre-production testing, testing per federal and state regulations, design failure mode and analysis data, early consumer complaints made exclusively to Toyota's network of dealers and directly to Toyota, aggregate warranty data compiled from Toyota's network of dealers, testing conducted by Toyota in response to consumer complaints, and repair order and parts data received by Toyota from its network of dealers.

55.    On November 5, 2019, Toyota issued a Tech Tip for a problem with the fuel system on the 2019 RAV4 Hybrid. The Tech Tip addresses a "Fuel Gauge Concern" and explains that "[s]ome 2019 model year RAV4 HV customers may be experiencing some concern related to fuel gauge reading less than full … The meter may display somewhere around 3/4 or 7/8 full at time of gas station pump auto stop." If presented with this issue technicians are advised to perform active testing to confirm the fuel gauge is operational. If it is operational technicians are told that "no repairs are recommended at this time. Concern is under investigation." If the fuel gauge is not good, technicians are simply instructed to "contact TAS for further assistance."

BLOOD HURST & O' REARDON, LLP

00161081

56.     On December 22, 2019, Automotive News released an online article titled "Pain at the pump for some RAV4 Hybrid Owners" in which it reports on the problem. In a statement to Automotive News, Toyota admitted it is "investigating a fuel tank shape issue on certain RAV4 Hybrid vehicles. In these cases, variations in fuel tank shape may prevent a full refill by up to several gallons. This condition may impact the vehicle's total available driving distance. As a best practice, customers should refuel before or when the low fuel light illuminates, to prevent running out of fuel."

57.     Automotive News explains that when Toyota "redesigned the RAV4 Hybrid for the 2019 model year, Toyota changed the design of its fuel tank from a longitudinal 14.8 gallon tank roughly shaped like a Native American papoose to a latitudinal, saddle-shaped design with a 14.5 gallon capacity, according to parts diagrams."

58.     Toyota has a duty to fully disclose the true nature of the Fuel Tank Defect to Subject Vehicle owners and lessees because it poses an unreasonable safety and environmental hazard. Toyota has exclusive knowledge of and access to material facts about the Fuel Tank Defect in the Subject Vehicles that are not known to or reasonably discoverable by Plaintiff and putative Class members. Toyota has actively concealed the Fuel Tank Defect from Plaintiff and members of the putative Class.

59.     Toyota knew the Subject Vehicles were defective at the time of sale or lease and thereafter.  Instead of informing Plaintiff and Class members, Defendants actively concealed the true nature and extent of the Fuel Tank Defect.

60.     Despite knowledge of the Fuel Tank Defect and notice from numerous consumer complaints, dealership repair orders, and other sources, Toyota has not fixed the Subject Vehicles nor reimbursed owners and lessees.  Instead, Defendants have refused to take any action to correct this concealed defect.

VIII.   Toyota's Warranty Covers the Fuel Tank Defect

61.     Toyota's New Vehicle Limited Warranty (aka Basic Warranty) "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota,"

BLOOD HURST & O' REARDON, LLP

00161081

subject to listed exceptions. The warranty provides basic coverage for 3 years or 36,000 miles, whichever comes first. The "entire vehicle is covered" subject to exclusions listed in the warranty.

62.     Toyota's Federal Emission Control Warranty ("FECW") warrants that the Subject Vehicles were "designed, built and equipped to conform at the time of sale with applicable federal emissions standards" also that they are "free from defects in materials and workmanship that may cause the vehicle to fail to meet these standards." Although "[f]ederal regulations required that this warranty be in effect for two years or 24,000 miles, whichever occurs first" Toyota voluntarily extended this coverage by applying its Basic Warranty of 3 years/36,000 miles, whichever occurs first. The FECW warranty covers certain parts of the Evaporative Control System ("EVC"), including the fuel tank.

63.     The Subject Vehicles are also covered by Toyota's California Emission Control Warranty ("CECW"). Vehicles equipped with a California Emission Control System that are registered and operated in California or any state that adopts California emission warranty provisions are covered by this warranty. These states include California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington.

64.     Under the CECW, Toyota will repair a Subject Vehicle, including diagnosis, parts and labor, where a warrantable condition exists. Toyota's Short-Term Emission Control System Defect Warranty covers identified emissions related parts for 3 years or 50,000 miles, whichever occurs first. Toyota's Long-Term Emission Control System Defect Warranty covers identified emissions related parts for seven years or 70,000 miles from the vehicle's in-service date, whichever occurs first. The fuel tank is identified as an emissions related part covered by both the short-term and long-term defect warranty.

## IX.    Plaintiff's Experience with His Subject Vehicle

### *Ken Ly*

65.     Plaintiff Ken Ly is a citizen of California who lives in Sunnyvale. In August 2019, Mr. Ly purchased a new 2019 Toyota RAV4 Hybrid XSE from Piercey Toyota in Milpitas, California.

Blood Hurst & O' Reardon, LLP

14

00161081

66.     Mr. Ly's vehicle was designed, manufactured, sold, distributed, advertised, marketed and warranted by Toyota and bears the Vehicle Identification No. 2T3EWRFV1KW032174.

67.     Prior to purchase, Mr. Ly reviewed Toyota's sales and promotional materials, including Toyota's website and the RAV4 Hybrid brochure where he looked at the specifications, pricing and features for this car. He also researched his vehicle online by reading articles and watching YouTube videos of people reviewing the car. He also saw Toyota ads on television for the RAV4 Hybrid and received targeted advertisements from Toyota when he was researching cars online. Plaintiff also test drove his vehicle, spoke with the dealer sales representative, and reviewed specifications in the Owner's Manual.

68.     Mr. Ly purchased the vehicle primarily for personal, family, or household purposes. Primary drivers of his decision to purchase the 2019 RAV4 Hybrid, although more expensive than comparable gas models, including the RAV4 non-hybrid, were Toyota's promised savings on gas, the driving range offered by the 14.5 gallon tank, including representations by Toyota that he would get on average 41/38/40 mpg (city/highway/combined), giving it a range of over 550 miles. Another major factor was Toyota's promises that that the hybrid had reduced emissions.

69.     Mr. Ly decided against purchasing other vehicles and instead purchased the Toyota RAV4 Hybrid because of Toyota's representations regarding fuel capacity and reduced emissions. Other vehicles he considered purchasing included the Subaru Outback, Honda CRV and Mazda CX5.

70.     Mr. Ly encountered the Fuel Tank Defect on his first attempt to refuel. From this point on, each time he tried to fill his vehicle to capacity the gas pump would prematurely shut-off. Even when the low fuel light was on, Mr. Ly could not put more than 10 gallons of gas into the advertised 14.5 gallon tank before the nozzle would automatically shut-off, indicating the gas tank was full.

71.     As a result of the Fuel Tank Defect, Mr. Ly does not get the 550 plus mile range Toyota promised. When Mr. Ly drove his new car off the lot it had 5 miles on it and showed an estimated driving range of 550 miles. Since then, he has never achieved anything close to this range. At this point his average range is 435 miles. This is significantly less than the range he was promised

BLOOD HURST & O' REARDON, LLP

00161081

prior to purchase and at the time of sale and for which he paid a premium for his hybrid vehicle. As a result of the Fuel Tank Defect, Mr. Ly has had to make more trips to the gas station to refuel.

72.    In and around October 2019, Mr. Ly took his vehicle into Piercey Toyota, in Milpitas, California for his 5,000 mile service at which time he mentioned his problem with the Fuel Tank Defect and asked his Toyota dealership to diagnose and fix the problem. At the time, Mr. Ly's vehicle was within the New Vehicle Limited Warranty of 3 years/36,000 miles, Federal Emission Control Warranty, and the California Emission Control Warranty. The dealership kept Mr. Ly's vehicle overnight but was not able to diagnose or repair the Fuel Tank Defect at that time. Mr. Ly had to get alternate transportation to/from work.

73.    On or about early January 2020, while still under warranty, Mr. Ly took his vehicle to Piercey Toyota, in Milpitas, California for a second time to try and diagnose and repair the Fuel Tank Defect. At this time, the dealership informed him Toyota was aware of the problem and was investigating but offered no indication that Toyota could or would fix his vehicle and provided no timeframe for when a fix might be forthcoming.

74.    At all relevant times, Mr. Ly has driven the vehicle in a foreseeable manner and the manner in which it was intended to be used. Mr. Ly would not have purchased his 2019 RAV4 Hybrid if Toyota had disclosed the Fuel Tank Defect or would have only agreed to purchase the vehicle at a substantially reduced price.

## CLASS ACTION ALLEGATIONS

75.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of a proposed Class defined as:

> All persons who purchased or leased a Subject Vehicle for end use and not for resale in the United States, the District of Columbia, Puerto Rico, and all other United States territories and protectorates.

76.    Alternatively, Plaintiff alleges a multi-state Class or single state Classes defined as:

> All persons who purchased or leased a Subject Vehicle for end use and not for resale in California and other states with similar laws.

Excluded from the Class are: (a) Toyota's officers, directors, and employees; (b) judicial officers assigned to this case; (c) governmental entities; and (d) persons who timely and properly exclude

BLOOD HURST & O' REARDON, LLP

themselves from the Class.

77.    Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

78.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Class consists of thousands of people. Therefore, the Class is so numerous that joinder of all members would be impracticable.

79.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including:

a.    whether Subject Vehicles are defective;

b.    whether Subject Vehicles' defects constitute a safety risk;

c.    whether Subject Vehicles' defects constitute an environmental risk;

d.    whether Toyota misrepresented the standard, quality, and characteristics of Subject Vehicles;

e.    whether Toyota's misrepresentations regarding the standard, quality, and characteristics of Subject Vehicles were likely to mislead reasonable consumers;

f.    whether Toyota's failure to disclose the Fuel Tank Defect on Subject Vehicles to Plaintiff and Class members was a material fact that a reasonable consumer would be expected to rely on when deciding whether to purchase or lease a Subject Vehicle;

g.    whether Toyota made and breached express and implied warranties concerning the Subject Vehicles;

h.    whether Plaintiff and the other Class members have been damaged and, if so, the extent of such damages; and

i.    whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution and injunctive relief.

BLOOD HURST & O' REARDON, LLP

00161081

80.     Toyota engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

81.     **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through Toyota's substantially uniform misconduct described above. Plaintiff advances the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Toyota that is unique to Plaintiff.

82.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the other Class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

83.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, and other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, providing the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

BLOOD HURST & O' REARDON, LLP

00161081

BLOOD HURST & O' REARDON, LLP

**COUNT I**

**Violation of California Consumer Legal Remedies Act,**

**California Civil Code §§ 1750, *et seq*.**

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

84.     Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

85.     Defendants are a "person" under Cal. Civ. Code § 1761(c).

86.     Plaintiff and each of the Class members are "consumers," as defined by Cal. Civ. Code § 1761(d), because they purchased or leased one or more Subject Vehicles for personal, family, or household purposes.

87.     Plaintiff and Class members purchased and leased Subject Vehicles that are of a lesser standard, grade, value, and quality than represented, and did not receive vehicles that met ordinary and reasonable consumer expectations regarding fuel capacity, safety and reduced environmental impact.

88.     Defendants' conduct, as described herein, in misrepresenting that Subject Vehicles' have a 14.5 gallon gas tank that will give them on average 41/38/40 mpg (city/highway/combined), with a range of over 550 miles, and omitting the fact that it designed and manufactured Subject Vehicles with a uniform defect within the fuel tank system that prevents the gas tank from accepting more than 10 gallons of gas before the pump is triggered to prematurely shut off, even when the low fuel light is illuminated, violates the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

89.     Specifically, Defendants violated the CLRA by misrepresenting and omitting material facts regarding Subject Vehicles, and by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the sale of Subject Vehicles:

        a.      representing that Subject Vehicles have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

19

00161081

b.  representing that Subject Vehicles were of a particular standard, quality, or grade if they are of another;

c.  advertising Subject Vehicles with intent not to sell them as advertised; and

d.  representing that Subject Vehicles have been supplied in accordance with previous representations when they have not.

90.  Defendants violated and continue to violate the CLRA by selling Subject Vehicles that they know possesses uniform defects that prevent the Subject Vehicles from accepting more than 10 gallons of gas, which drastically reduces the driving range of these vehicles, decreases the number of miles that can be driven before refueling is needed, increases the amount Plaintiff and Class members must spend on gas because of added trips to the gas station, increases the amount of time Plaintiff and Class members must spend refueling their Vehicles and creates safety hazards for drivers and environmental hazards. Toyota omitted from Plaintiff and the other Class members, to whom it had a duty to disclose, the material fact that Subject Vehicles were sold with the Fuel Tank Defect. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

91.  During any one of Plaintiff's multiple interactions with Toyota dealerships, Toyota could have disclosed the material fact of the defect, that would have resulted in Plaintiff receiving the information.

92.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the other Class members, seeks a court order enjoining the above-described wrongful acts and practices of Defendants, ordering Defendants to extend repair remedies to all Class members who experience the Fuel Tank Defect, and awarding restitution and disgorgement.

93.  Pursuant to Cal. Civ. Code § 1782 of the Act, Plaintiff notified Defendants in writing by certified mail of the particular violations of § 1770 of the Act and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. A copy of the letter is attached hereto as **Exhibit A**. If Defendants fail to rectify or fail to agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant

20

to Cal. Civ. Code § 1782 of the Act, Plaintiff will amend this complaint to add claims for damages, as appropriate.

94.    Defendants' conduct is malicious, fraudulent and wanton, and provides misleading information.

95.    Pursuant to Cal. Civ. Code § 1782(d) of the Act, attached as **Exhibit B** is the affidavit showing that this action was commenced in the proper form.

## COUNT II

### Violation of California Unfair Competition Law,

### California Business & Professions Code §§ 17200, *et seq.*

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

96.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

97.    The Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating California Civ. Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9), and (16), common law, and California Business & Professions Code §§ 17500, *et seq.*, and CARB's "Specifications for Fill Pipes and Openings of 2015 and Subsequent Model Motor Vehicle Fuel Tanks," as adopted by the EPA. Plaintiff, individually and on behalf of the other Class members, reserves the right to allege other violations of the law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

98.    In the course of conducting business, Defendants committed "unfair" business practices by, among other things, making representations of material facts that the Subject Vehicles have a 14.5 gallon tank that gets on average 41/38/40 mpg (city/highway/combined), giving the vehicles' a range of over 550 miles and omitting material facts that the Subject Vehicles contain a Fuel Tank Defect that effectively reduces the usable tank capacity of the Subject Vehicles to 10

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

gallons or less and drastically reduces the driving range of these vehicles by decreasing the number of miles that can be driven before refueling is needed. During any one of Plaintiff's multiple interactions with Toyota dealerships, Toyota could have disclosed the material fact of the defect, and that would have resulted in Plaintiff receiving the information. There is no societal benefit from such false and misleading representations and omissions – only harm. While Plaintiff and the other Class members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair," as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

99.    Defendants' acts and omissions violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

100.    California Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of § 17200) and omissions of material facts regarding the safety, characteristics, and production quality of the Subject Vehicles.

101.    Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were false or misleading and likely to deceive the consuming public within the meaning of California Business & Professions Code §§ 17200, *et seq*.

102.    Plaintiff, in fact, has been deceived as a result of his reliance on Defendants' material representations and omissions, which are described above. Plaintiff has suffered injury in fact and lost money and/or property as a result of purchasing or leasing one of the Subject Vehicles.

103.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Plaintiff, on behalf of himself, all others similarly situated, and the general public, seek restitution from Defendants of all money obtained from Plaintiff and the other Class members collected as a result of unfair competition, an

BLOOD HURST & O'REARDON, LLP

injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with California Business & Professions Code § 17203.

104.    As a result of Defendants' unfair, deceptive, and/or fraudulent conduct, owners and lessees of Subject Vehicles have suffered loss of money and/or property. Plaintiff and Class members have suffered injury in fact and incurred damages.

## COUNT III

### Breach of Implied Warranty of Merchantability,

### Cal. Comm. Code § 2314

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

105.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

106.    Defendants are and were, at all relevant times, a merchant with respect to Subject Vehicles, and manufactured, distributed, warrantied and/or sold Subject Vehicles.

107.    A warranty that Subject Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased was implied by law in the instant transactions.

108.    Plaintiff and the other Class members purchased or leased Subject Vehicles manufactured and sold by Defendants in consumer transactions.

109.    Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which cars are used. Subject Vehicles left Defendants' possession and control with a Fuel Tank Defect that rendered them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to public safety. Plaintiff and the other Class members used their Subject Vehicles in the normal and ordinary manner for which Subject Vehicles were designed and advertised.

110.    Defendants knew before selling or leasing the Subject Vehicles to Plaintiff and the other Class members, or earlier, that the Subject Vehicles were manufactured with a Fuel Tank Defect that prevents the gas tank from accepting more than 10 gallons of gas before the pump is triggered to prematurely shut off, even when the low fuel light is illuminated.

BLOOD HURST & O' REARDON, LLP

111. Despite Plaintiff's and the other Class members' normal and ordinary use, maintenance, and upkeep, the Subject Vehicles experienced the Fuel Tank Defect as a result of a manufacturing and/or design defect that existed at the time Defendants transferred Subject Vehicles from their possession or control. The defect rendered Subject Vehicles unfit for their ordinary use and incapable of performing the tasks they were designed, advertised, and sold to perform.

112. As a result, the Subject Vehicles, including their fuel tank and related components, are not of fair or average quality. Nor would they pass without objection in the automotive industry. The Fuel Tank Defect drastically reduces the number of miles that can be driven before refueling is needed, creates a safety hazard for drivers who are left wondering how much gas is in their tank and how far they can drive before they run out of gas, and creates an environmental hazard by increasing emissions.

113. All conditions precedent have occurred or been performed.

114. Defendants had actual notice of its breach of warranty. Through consumer complaints, warranty records, *inter alia*, Defendants knew of the defect, the existence and ubiquity of which they knew much earlier. Defendants implementation of the Tech Tip and their statement to Automotive News also show actual notice.

115. Defendants' warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect. Defendants knew when they first issued these warranties and their limitations that the defect existed. Defendants also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and squandered its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendants any more time to cure the defect, cure its breaches of warranty, or otherwise attempt to resolve or address Plaintiff's and the other Class members' claims.

///

///

24

BLOOD HURST & O' REARDON, LLP

116.    As a direct and foreseeable result of the Fuel Tank Defect, Plaintiff and the other Class members paid a premium for hybrid vehicles that do not provide the promised driving range and environmental impact and other incidental and consequential damages recoverable under the law.

117.    Plaintiff and the other Class members have had sufficient direct dealings with Defendants or its agents (dealerships) to establish privity of contract between themselves and Defendants. Privity, nevertheless, is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers; specifically, they are the intended beneficiaries of Defendants' implied warranties. The dealers were not intended to be the ultimate consumers of Subject Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers – such as Plaintiff and the other Class members. Privity is also not required because Plaintiff's and the other Class members' Subject Vehicles are unsafe due to the aforementioned defects and nonconformities.

## COUNT IV

### Breach of Express Warranty,

### Cal. Comm. Code § 2313

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

118.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

119.    Defendants provided all purchasers and lessees of the Subject Vehicles with the express warranties described herein, which became part of the basis of the bargain. Accordingly, Defendants' express warranties are express warranties under California law.

120.    The fuel tank and related component parts in the Subject Vehicles were manufactured, installed, and/or distributed by Defendants and are covered by the express warranties.

121.    Toyota's New Vehicle Limited Warranty "covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota, subject to [] [certain] exceptions[.]" "Coverage is for 36 months or 36,000 miles, whichever occurs first[.]"

BLOOD HURST & O' REARDON, LLP

122. Defendants breached the express warranty by:

a. offering the 3-year/36,000-mile New Vehicle Limited Basic Warranty with the purchase or lease of the Subject Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

b. selling and leasing Subject Vehicles with a fuel system, including fuel tank, that were defective in material and workmanship, requiring repair or replacement within the warranty period; and

c. refusing and/or failing to honor the express warranty by repairing, free of charge, the Fuel Tank Defect.

123. Plaintiff and the other Class Members relied on the existence and length of the express warranties in deciding to purchase or lease the Subject Vehicles.

124. Plaintiff and the other Class Members (or the prior owners/lessees of their Subject Vehicles) notified Defendants of the breach within a reasonable time and/or were not required to do so. Defendants were also on notice of the Fuel Tank Defect from, among other sources, the complaints and service requests for the Fuel Tank Defect they received from Class Members and their dealers.

125. As a direct and proximate cause of Defendants' breach, Plaintiff and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale or lease, *i.e.*, the difference between the value of the vehicle as promised and the value of the vehicle as delivered. Additionally, Plaintiff and the other Class Members either have incurred or will incur economic damages related to the Fuel Tank Defect described herein, including but not limited to increased spending on gas caused by more frequent trips to the gas station and decreased driving range.

126. Plaintiff and the other Class Members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, attorneys' fees, costs of suit, and other relief as appropriate.

CLASS ACTION COMPLAINT

00161081

BLOOD HURST & O' REARDON, LLP

**COUNT V**

**Breach of Express Warranty – California Emission Control System Limited Warranty**

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

127.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

128.    Toyota's California Emission Control Warranty provides that "[w]here a warrantable condition exists, Toyota will repair your vehicle at no cost to you, including diagnosis, parts and labor."

129.    Toyota's Short-Term Emission Control System Defect Warranty provides that "[i]f an emissions related part listed on pages 18-19 is defective, the part will be repaired or replaced by Toyota." This coverage is "[f]or three years or 50,000 miles, whichever occurs first[.]" Emissions related parts listed on pages 18-19 include the "fuel tank."

130.    Toyota's Long-Term Emission Control System Defect Warranty provides that "[i]f an emissions-related part listed on page 25 is defective, the part will be repaired or replaced by Toyota." This coverage is "[f]or seven years or 70,000 miles from the vehicle's in-service date, whichever occurs first[.]" Emissions related parts listed on page 25 includes the "fuel tank."

131.    Under this warranty owners and lessees are "responsible for presenting your vehicle to a Toyota dealership as soon as a problem exists" whereupon Toyota promises warranty repairs will "be completed in a reasonable amount of time, not to exceed 30 days." If "a Toyota dealership is unable to complete repairs on your vehicle within 30 days, you may have the repairs made under Toyota's provisions for emergency warranty repairs."

132.    Vehicles equipped with a California Certified Emission Control System that are registered and operated in California or any state that adopts California emission warranty provisions are covered by this warranty. Currently, California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington are the other states to which this warranty applies. Vehicles covered by this warranty are also covered by the Federal Emission Control Warranty.

00161081

BLOOD HURST & O' REARDON, LLP

133.    The Fuel Tank Defect is covered by the CECW. The California Air Resources Board ("CARB") prohibits vehicles from being sold in California that fail to comply with the "Specifications for Fill Pipes and Openings of 2015 and Subsequent Model Motor Vehicle Fuel Tanks." *See* 13 CCR § 2235. The EPA has adopted this Specification.

134.    The specification states:

Fill Rate Specification
A.  The fill pipe on 2015 and subsequent model year vehicles shall accept a fill rate of 10 gallons per minute using the test procedure described in Section 6.
B.  There shall be no premature nozzle shut-off in 90 percent of the test repetitions for any test nozzle using the test procedures described in Section 6.

135.    "Premature nozzle shut-off" means any automatic shut-off of the vapor recovery nozzle before the vehicle fuel tank is filled to either 90 percent of the nominal fuel tank capacity or to within two gallons less than the nominal tank capacity, whichever corresponds to the smaller quantity of gasoline in the fuel tank.

136.    The Subject Vehicles have a 14.5 gallon tank with a 2.2 gallon reserve. Owners report premature shut off at 8-10 gallons when the tank is almost empty. This fails to comply with the Specification.

137.    Toyota Certified Compliance with this Specification for the 2019/2020 RAV4. Upon information and belief Toyota knew about the issue in the 2019 RAV4 Hybrid through internal testing, numerous consumer complaints, dealership repair orders, and other sources. Drivers report the problem happening early, many times at the first fueling. Toyota knew it was an issue with the 2020 RAV4 Hybrid. Yet, it certified compliance with this Specification.

## COUNT VI

## **Breach of Express Warranty – Federal Emission Control System Limited Warranty**

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

138.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

139.    Toyota's Federal Emission Control Warranty warrants that the Subject Vehicles were "designed, built and equipped to conform at the time of sale with applicable federal emissions

28

standards" and "[i]s free from defects in materials and workmanship that may cause the vehicle to fail to meet these standards." The "fuel tank" is a covered component under Toyota's FECW.

140.    Although the federal regulations require this warranty to be in effect for two years or 24,000 miles from the vehicle's in-service date, whichever occurs first, Toyota voluntarily extended this coverage so that it falls "under the terms of the Basic Warranty" under which "Toyota provides coverage of three years or 36,000 miles, whichever occurs first."

141.    The EPA has adopted CARB's "Specifications for Fill Pipes and Openings of 2015 and Subsequent Model Motor Vehicle Fuel Tanks."

142.    Toyota certified compliance with the Clean Air Act for the 2020 RAV4 Hybrid and upon information and belief for the 2019 RAV4 Hybrid.

143.    Because of the Fuel Tank Defect the Subject Vehicles fail to comply with CARB's "Specifications for Fill Pipes and Openings of 2015 and Subsequent Model Motor Vehicle Fuel Tanks," which is covered by Toyota's FECW.

### COUNT VII

### Breach of Express Warranty - Song-Beverly Consumer Warranty Act,

### Cal. Civ. Code §§ 1790, *et seq*.

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

144.    Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

145.    Pursuant to the Song-Beverly Consumer Warranty Act Civil Code sections 1790, *et seq*. the Subject Vehicles constitute "consumer goods" used primarily for family or household purposes, and Plaintiff uses his Subject Vehicle primarily for those purposes.

146.    Pursuant to the Song-Beverly Act, the Subject Vehicles constitute a "new motor vehicle."

147.    Plaintiff and other Class Members are buyers as defined under the Song-Beverly Act.

148.    Toyota is a "manufacturer" and/or "distributor" as defined under the Act.

149.    Express warranties, including Toyota's New Vehicle Limited Warranty, CECW and FECW accompanied the lease and purchase of the Subject Vehicles to Plaintiff and the other Class

Members by which Toyota undertook to preserve or maintain the utility or performance of the Subject Vehicles or provide compensation if there was a failure in such utility or performance.

150. The Subject Vehicles had defects and/or nonconformities covered by the warranties that substantially impaired their value, use, or safety to Plaintiff and Class members.

151. The foregoing defects and/or nonconformities to the warranties manifested within the applicable express warranty periods. The defects and/or nonconformities substantially impair the use, value and/or safety of the Subject Vehicles.

152. Plaintiff delivered his Subject Vehicle to an authorized Toyota repair facility as defined in the Act, for repair of the defects and/or nonconformities.

153. Defendants, and each of them, failed to service or repair Plaintiff's Subject Vehicle to match the written warranties after a reasonable number of attempts.

154. Notwithstanding the foregoing, Toyota has failed to either promptly replace Plaintiff's Subject Vehicle or promptly make restitution in accordance with the Song-Beverly Act.

155. By failing to remedy the Subject Vehicle's defect and/or nonconformities within a reasonable number of opportunities or to promptly issue a refund or replacement vehicle, Toyota is in breach of its obligations to Plaintiff under the Song-Beverly Act.

156. Under the Act, Plaintiff and the other Class Members are entitled to replacement or reimbursement of the price paid for their Subject Vehicle less that amount directly attributable to use by them prior to discovery of the defects and/or nonconformities.

157. Plaintiff and the Class is entitled to all incidental, consequential, general damages resulting from Defendants' failure to comply with their obligations under the Song-Beverly Act.

158. Plaintiff and the Class is entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

159. Plaintiff and the Class is entitled to, in addition to the amounts recovered, a civil penalty of up to two times the amount of actual damages in that Toyota, has willfully failed to comply with the responsibilities under the Act.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00161081

**COUNT VIII**

**Breach of Implied Warranty - Song-Beverly Consumer Warranty Act,**

**Cal. Civ. Code §§ 1790, *et seq*.**

(On Behalf of Plaintiff Ly and the Nationwide Class
or, Alternatively, the California Class)

160.     Plaintiff repeats and realleges all other paragraphs as if fully set forth herein.

161.     Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Subject Vehicles. Defendants knew or had reason to know of the specific use for which the Subject Vehicles were purchased.

162.     The distribution and sale of the Subject Vehicles was accompanied by Toyota's implied warranty that the Vehicles were merchantable.

163.     Defendants provided Plaintiff and the other Class Members with an implied warranty that the Subject Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold.

164.     Defendants, and each of them, impliedly warranted, *inter alia*, that the Subject Vehicles would pass without objection in the trade under the contract description; that the Vehicles were fit for the ordinary purposes for which they were intended, that the Vehicles were adequately assembled; and/or that the Vehicles conformed to the promises or affirmations of fact made to Plaintiff.

165.     The hybrid Subject Vehicles are not fit for their ordinary purpose of providing fuel efficient and reliable and safe transportation because, *inter alia*, the Subject Vehicles contain a defect that prevents the gas tank from accepting more than 10 gallons of gas before the pump is triggered to prematurely shut off drastically reducing the driving range of these vehicles, decreasing the number of miles that can be driven before refueling is needed, and creating safety hazards to occupants and other drivers, and environmental hazards. As such, the Subject Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

166.     Defendants' actions, as complained of herein, breached the implied warranty that the Subject Vehicles were of merchantable quality and fit for ordinary use in violation of Cal. Civ. Code

BLOOD HURST & O' REARDON, LLP

00161081

§§ 1792 and 1791.1.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court enter an Order:

a.    certifying the Class under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as requested herein, and appointing their counsel as Class Counsel;

b.    appointing Plaintiff as Class Representative;

c.    finding that Toyota engaged in the unlawful conduct as alleged herein;

d.    awarding Plaintiff and the other Class members damages;

e.    awarding Plaintiff and the other Class members restitution and disgorgement of monies Defendants acquired through its violations of the law;

f.    awarding Plaintiff and the other Class members injunctive and declaratory relief;

g.    requiring Toyota to repair or replace the Fuel Tank Defect on Subject Vehicles;

h.    awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

i.    awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

j.    granting such other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: January 28, 2020

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
JENNIFER L. MACPHERSON (202021)

By:    *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100

BLOOD HURST & O' REARDON, LLP

32

1    619/338-1101 (fax)
     tblood@bholaw.com
2    lhurst@bholaw.com
     jmacpherson@bholaw.com
3
     BARNOW AND ASSOCIATES, P.C.
4    BEN BARNOW
     ERICH P. SCHORK
5    ANTHONY L. PARKHILL
     205 W. Randolph Street, Suite 1630
6    Chicago, IL 60602
     Tel: 312/621-2000
7    312/641-5504 (fax)
     b.barnow@barnowlaw.com
8    e.schork@barnowlaw.com
     aparkhill@barnowlaw.com
9

10   *Attorneys for Plaintiff*

11

12

BLOOD HURST & O' REARDON, LLP

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

00161081